B.    <u>Deutsche Bank Has Established a Pattern of Foreclosing or Attempting to Foreclose on Property without Proof of Its Legal Right to Enforce Security Interests in Said Property</u>

As noted, Deutsche Bank now holds putative legal title to the Property although it has never established its status as a "person entitled to enforce" the security interest under the Note and Deed of Trust. Deutsche Bank was able to accomplish this remarkable feat by virtue of the non-judicial foreclosure and unlawful detainer procedures in effect in California. These procedures were designed to facilitate expeditious and inexpensive resolution of foreclosures, while imposing a minimal burden on judicial resources.

Not coincidentally, these systems were also designed and implemented before the events now becoming commonly known as "the mortgage mess" had developed. Unfortunately, now that "the mortgage mess" is upon us, California's well-intentioned systems leave a wide path for unscrupulous—or even merely injudicious and sloppy—purported "beneficiaries". By virtue of California's systems, entities may falsely claim to be beneficiaries by assignment—whether the false representation is intentional or negligent—and then commence to take unfair advantage of the expedited foreclosure and unlawful detainer procedures to avoid the consequences of their misconduct and to profit thereby.

Deutsche Bank may not have intentionally set out to steal Plaintiff's property, but its documented pattern and course of conduct in similar cases across the country is clear and well-established, and demonstrates Deutsche Bank's brash and reckless disregard for the rights of hapless homeowners who cross its path. Deutsche Bank is notorious nationwide for seeking to foreclose upon property as to which it is not entitled to enforce a security interest, or, at a minimum, as to which it cannot legally establish such entitlement. In other jurisdictions, where judicial foreclosure is the norm, Deutsche Bank has stumbled on this point repeatedly, as further discussed below.

1     Nevertheless, in California, Deutsche Bank still blithely proceeds to foreclose
2 on property—as it has in this case—without virtue of recorded assignment of
3 beneficial interest, and without producing any evidence of its status as beneficiary.
4 Deutsche Bank relies on and manipulates California's expedited non-judicial
5 foreclosure and unlawful detainer systems to quickly and cheaply obtain property at
6 the expense of homeowner victims who generally lack the legal and financial
7 wherewithal to challenge Deutsche Bank's actions.
8     In this case, Deutsche Bank apparently maintains that it somehow acquired the
9 beneficial interest under the Deed of Trust at some point between August 2006 and
10 January 2008. Matters such as how this came about, who purportedly assigned the
11 interest, when such assignment may have occurred, and under what circumstances are
12 all left entirely to the imagination. (The original beneficiary, New Century, declared
13 bankruptcy in 2007, and its directors and officers are now occupied with various
14 criminal investigations into New Century's business practices.) In the absence of
15 direct evidence, it is instructive to look to the circumstances of "the mortgage mess"
16 in general, and Deutsche Bank's prominent role therein, in particular.
17     C.    <u>Deutsche Bank's Role in "the Mortgage Mess"</u>
18     As stated, Plaintiff contends that Deutsche Bank was not entitled to enforce the
19 security interest under the Deed of Trust, and, accordingly, Deutsche Bank is nothing
20 more than a third party coming in and using—and abusing—the judicial process to
21 literally steal Plaintiff's home. Prior to recent economic events, Plaintiff's allegations
22 may have seemed hyperbolic and melodramatic. However, courts across the nation
23 are now taking note that this is exactly what seems to be happening, as the mortgage
24 foreclosure crisis spirals further out of control.
25     Historically, a bank that issued a loan secured by a mortgage note held onto that
26 note, and if the bank needed to foreclose, it would simply produce the note to prove its
27 interest in the loan. In the past twenty years or so, however, banks started selling their
28 home loans to other financial entities, which "pooled" large numbers of loans, put

them into trusts, and sold securities based on them. As borrowers made payments on these "pooled" loans, investors in these securities received payments on their investment. One consequence of this development proved to be a major factor in causing the current economic crisis: As it became less common for an originating lender to hold on to a loan, the originators also lost their incentive to ensure that borrowers would be able to repay the loans—by the time a borrower might default, the mortgage note would have been sold and the default would be someone else's problem.

As the housing market exploded, and with lenders motivated to issue as many loans as possible and then to sell them as quickly as possible, without regard to borrowers' repayment ability, the scene was set for eventual disaster. In the frenzy that comprised the market in recent years, entities involved in originating and securitizing loans frequently did not comply with the formalities of assigning the notes and physically transferring them. Professor Alan White of Valparaiso University School of Law commented in an article on Bloomberg.com: "Loans were mass produced and shortcuts were taken. A lot of the paperwork is done in the name of the original lender and a lot of the original lenders aren't around anymore."[3] Another potential peril of the sloppy handling of assignments and pooling is the possibility of the same mortgage ending up in more than one pool.[4]

Deutsche Bank, in its role as "Trustee", has been taken to task with notable frequency for its failure to prove its right to foreclose as beneficial holder of any given security interest, particularly in judicial foreclosure states. According to the National Law Journal, Deutsche Bank is "the bank most cited in suits and most often denied

---

[3] Irvy, Bob, *Banks Lose to Deadbeat Homeowners as Loans Sold in Bonds Vanish*, Bloomberg.com (Feb. 22, 2008)
http://www.bloomberg.com/apps/news?pid=20670001&refer=us&sid=aejJZdqodTCM
[4] Davis, Wendy, *Finding it Hard to Be a Loan*, A.B.A. J., (March 2008) www.abajournal.com/magazine/finding_it_hard_to_be_a_loan; Morgenson, Gretchen, *Foreclosures Hit a Snag for Lenders,* New York Times (Nov. 15, 2007) http://www.nytimes.com/2007/11/15/business/15lend.html.

foreclosures."[5] U.S. District Judge David D. Dowd Jr., in Ohio's northern district, chastised Deutsche Bank for what he called their "cavalier approach" and "take my word for it" attitude toward proving ownership of the mortgage note in a foreclosure case.[6] In Florida, Circuit Judge Lance Day dismissed a foreclosure brought by Deutsche Bank, observing that the only document Deutsche Bank presented was a mortgage payable to another party, which did not reflect any recording or assignment information.[7] In other words, Deutsche Bank was again trying to foreclose on a home as to which it could not prove it was the person entitled to do so. Unfortunately, this is not an isolated occurrence for Deutsche Bank.

On October 31, 2007, U.S. District Judge Christopher Boyko in Cleveland dismissed fourteen Deutsche Bank foreclosure cases, stating that Deutsche Bank had presented no proof to back up its claim that it was the holder and owner of the mortgages. *In re Foreclosure Cases*, Nos.1:07CV2282, *et al.*, Amended General Order, No. 2006-16. Obviously, the fact that Deutsche Bank is notoriously flouting foreclosure laws elsewhere is not proof that it is doing so in the instant case, but this Court also should not be expected to bury its head in the sand and ignore Deutsche Bank's established and well-documented pattern of practice across the nation.

Lest the Court be inclined to think these cases represent exceptions, rather than standard operating procedure, Plaintiff calls the Court's attention to another A.B.A. Journal article, which cites a study by University of Iowa law professor Katharine M. Porter, who reviewed 1,733 bankruptcy filings, and found that in 40 percent of them, the creditors had not shown that they actually owned the filers' mortgages.[8] Between

---

[5] Kay, Julie, *Judges, Attorneys Work to Stanch Foreclosures*, Nat.L.J. (July 16, 2008) www.nlj.com; www.law.com/jsp/article.jsp?id=1202423026401#
[6] Irvy, Bob, *Banks Lose to Deadbeat Homeowners as Loans Sold in Bonds Vanish*, Bloomberg.com (Feb. 22, 2008) http://www.bloomberg.com/apps/news?pid=20670001&refer=us&sid=aejJZdqodTCM
[7] Kay, Julie, *Judges, Attorneys Work to Stanch Foreclosures*, Nat.L.J. (July 16, 2008) www.nlj.com; www.law.com/jsp/article.jsp?id=1202423026401#
[8] Davis, Wendy, *Finding it Hard to Be a Loan*, A.B.A. J., (March 2008) www.abajournal.com/magazine/finding_it_hard_to_be_a_loan.

Judge Boyko's ruling in October 2007 and July 2008, "more than 100 foreclosure actions [were] been dismissed in federal courts and some state courts because plaintiffs couldn't prove they owned the mortgages on which they were seeking to foreclose."[9] As of February 2008, judges in at least five states had halted foreclosure proceedings because the banks that pool the mortgages into securities and the loan servicers had not been able to prove they owned the mortgages.[10]

California, of course, is a non-judicial foreclosure state. Accordingly, unless a homeowner takes affirmative steps to sue the foreclosing party, the first time he or she will meet the foreclosing party in court is at an unlawful detainer hearing. As Judge Boyko observed, most homeowners facing foreclosure do not have the wherewithal to bring such an action:

> Typically, the homeowner who finds himself/herself in financial straits. . . is not interested in testing state or federal jurisdictional requirements, either *pro se* or through counsel. Their focus is either, 'how do I save my home,' or 'if I have to give it up, I'll simply leave and find somewhere else to live.'

*In re Foreclosure Cases*, Nos.1:07CV2282, *et al.*, Amended General Order, No. 2006-16, fn. 3.

It is abundantly clear that Deutsche Bank has a well-earned national reputation for attempting to foreclose without establishing its legal right to do so. Accordingly, Plaintiff's contention that this is precisely what has happened in the instant action is eminently reasonable and believable, and extremely likely to be affirmatively proven at trial.

---

[9] Seidenberg, Steven, *Homing in on Foreclosure*, A.B.A. J., (July 2008) www.abajournal.com/magazine/homing_in_on_foreclosure. This A.B.A. Journal article also quoted a very astute observation by a North Carolina bankruptcy lawyer: " 'You have to prove to the court that you have the original note and that you have lawfully obtained it via an unbroken chain of assignments. . .Those have turned out to be two very different obstacles for trustees to establish. Over 400 loan originators went out of business last year. I don't see how you get an assignment from somebody that went out of business.'" *Id.*

[10] Irvy, Bob, *Banks Lose to Deadbeat Homeowners as Loans Sold in Bonds Vanish*, Bloomberg.com (Feb. 22, 2008) http://www.bloomberg.com/apps/news?pid=20670001&refer=us&sid=aejJZdqodTCM